IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                                                    |     |                              |
| -------------------------------------------------- | --- | ---------------------------- |
|                                                    | :   |                              |
| JIM GRAY                                           |     |                              |
|                                                    | :   |                              |
| v.                                                 | :   | Civil Action No. DKC 16-1792 |
|                                                    | :   |                              |
| WASHINGTON METROPOLITAN AREA<br>TRANSIT AUTHORITY  | :   |                              |

**MEMORANDUM OPINION**

Presently pending and ready for resolution is a motion to dismiss filed by Defendant Washington Metropolitan Area Transit Authority ("Defendant" or "WMATA").  (ECF No. 6).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion to dismiss will be granted.

**I.  Background**

In a separate suit against various individual WMATA employees, Plaintiff alleges that he was unlawfully pulled over by members of a police unit operated by WMATA called the Metro Transit Police Department ("Transit Police") on July 30, 2013.  *See* Second Amended Complaint at 3-4, Gray v. Sarles, No. DKC-14-2939 (D.Md. May 9, 2016), ECF No. 25.  Plaintiff contends that the Transit Police officers who pulled him over were acting outside the geographic and legal scope of their authority at the time of the stop.  *Id.*

Prior to initiating that suit, Plaintiff sent a letter seeking information on the Transit Police officers involved to WMATA General Manager Richard Sarles on April 29, 2014. (ECF No. 1, at 3). Transit Police Deputy Chief Kevin Gaddis responded on May 15, stating that the incident was "undergoing investigation within the [Transit Police]" and that he would contact Plaintiff when the investigation was complete and the results were available. (ECF No. 8-1, at 1). Plaintiff replied to Mr. Gaddis on July 24 (*id.* at 2), but he never received more information from WMATA about the internal investigation (ECF No. 1, at 3).

On September 17, 2014, Plaintiff filed his suit against Mr. Sarles and three unnamed officers from the 2013 Stop, alleging violations of 18 U.S.C. § 241, 18 U.S.C. § 242, 42 U.S.C. § 14141, and 42 U.S.C. § 1983. (*Id.*). On July 6, 2015, the court dismissed the case against Mr. Sarles, finding that he had been sued in his official capacity and that, in that capacity, he was immune from suits for torts committed by Transit Police officers performing governmental functions. *Gray v. Sarles*, No. DKC-14-2939, 2015 WL 4092455, at *2-4 (D.Md. July 6, 2015). Because Plaintiff had failed to name or serve any other defendants in that case, the court also ordered Plaintiff to show cause why the case should not be dismissed. *Id.* at *3-4.

On August 5, 2015, Plaintiff submitted a request to WMATA under the Maryland Public Information Act, Md. Code, Gen. Provisions § 4-101, *et seq.*, seeking records including: (1) the identities of the three officers who were involved in the traffic stop; (2) the identity of the responding supervisor for that stop; (3) the identity of the dispatch person who received a call he had made during the stop; (4) the findings of the investigation that Deputy Chief Gaddis had referenced; (5) a copy of the Transit Police jurisdiction policy; (6) "any logs and officers['] reports regarding this matter;" and (7) any WMATA communications regarding the traffic stop. (ECF No. 8-1, at 4-5).   Defendant responded on August 25, acknowledging Plaintiff's request and explaining that the request would be processed under the Public Access to Records Policy ("PARP"), a public records law modeled after the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and applicable to WMATA.   (*Id.* at 6). Defendant's letter notified Plaintiff that: (1) he needed to submit a notarized request before any records could be released; (2) certain information was exempt from disclosure and would be redacted; and (3) it would charge him a fee for any staff time spent beyond the first two hours and any copying beyond the first 100 pages.   (*Id.* at 7).   Plaintiff responded on September 3 with a notarized request for the same information he had originally requested.   (*Id.* at 9).

On October 23, Defendant responded to Plaintiff's formal September 3 request, indicating it had records responsive to each of Plaintiff's inquiries that would be "releasable subject to redaction" for various PARP exemptions. (ECF No. 6-2, at 3). It also told Plaintiff that the estimated cost of the records would be $252.00 (*id.* at 4) and that he would have to pay before WMATA would retrieve the records. *See* PARP 8.9 (WMATA may seek payment in advance if it has estimated that the fees will exceed $250.00); *see also* 5 U.S.C. § 552(a)(4)(A)(v) (same rule under FOIA). The letter concluded by explaining that PARP policy was to consider requests withdrawn if payment or clarification was not received within 30 business days, giving Plaintiff until December 8 to respond or submit payment. (ECF No. 6-2, at 4). On December 11, Defendant sent a letter notifying Plaintiff that it had not received any payment or reply and was assuming that he had withdrawn his request. (ECF No. 6-3). This letter also explained that he could appeal the determination until January 27, 2016. (*Id.*).

Plaintiff filed the instant suit under FOIA on May 25, 2016. (ECF No 1). He seeks the same seven sets of records he previously requested. (*Id.* at 3-4). On August 15, Defendant moved to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P 12(b)(1). (ECF No. 6). Plaintiff responded on

August 23 (ECF No. 8), and Defendant replied on September 9 (ECF No. 9).[1]

## II. Standard of Review

Defendant moves to dismiss under Fed.R.Civ.P. 12(b)(1) on the grounds that (1) Plaintiff's pleadings as to subject matter jurisdiction under FOIA are invalid and (2) he has failed to exhaust his administrative remedies.  The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court.  *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  A failure to exhaust administrative remedies under FOIA deprives the courts of subject matter jurisdiction, *see* 5 U.S.C. § 552(a)(6)(A)(ii), requiring analysis under Rule 12(b)(1) at the motion to dismiss stage.  *See Pair v. Soc. Sec. Admin.*, No RDB-15-1458, 2016 WL 739188, at *2-4 (D.Md. Feb. 25, 2016).  Exhaustion is also a jurisdictional prerequisite under PARP.  *See* PARP § 9.2.1.  In a

---

[1] Without seeking leave, Plaintiff has also filed a surreply.  (ECF No. 10).  Under Local Rule 105.2(a), "[u]nless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."  A surreply may be permitted "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."  *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md. 2003) (citation omitted).  By contrast, "[a] motion for leave to file a surreply may be denied when the matter addressed in the reply is not new."  *Marshall v. Capital View Mut. Homes*, No. RWT-12-3109, 2013 WL 3353752, at *3 (D.Md. July 2, 2013) (citation omitted).  Defendant did not raise new arguments in its reply.  Therefore, the court will not grant Plaintiff leave to file a surreply.

Rule 12(b)(1) motion, the court "is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). The court should grant the motion to dismiss only "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R.*, 945 F.2d at 768.

Generally, *pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Liberal construction means that the court will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it does not mean that the court should rewrite the complaint to include claims never presented. *Barnett v. Hargett*, 174 F.3d 1128, 1132 (10th Cir. 1999). That is, even when *pro se* litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *Forquer v. Schlee*, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012)

(citation and internal quotation marks omitted) ("[E]ven a *pro se* complaint must be dismissed if it does not allege a plausible claim for relief.").

## III. Analysis

Plaintiff purports to bring this action under FOIA. (ECF No. 1 ¶ 1). He argues that WMATA receives federal funding, making FOIA applicable here. (ECF No. 8, at 2). Defendant moves to dismiss because it is not subject to FOIA. FOIA applies only to agencies that are an "authority of the Government of the United States." 5 U.S.C. §§ 551(1); 552(f)(1). "However, it is clear on the face of 5 U.S.C. § 551(1) that an 'agency' must be a *federal* entity, and to the extent that the non-state status of the District of Columbia creates any ambiguity, the definition of 'agency' explicitly does not include the District of Columbia." *People for the Am. Way Found. v. U.S. Dep't of Educ.*, 516 F.Supp.2d 28, 36 (D.D.C. 2007) (citing 5 U.S.C. § 551(1)(D)). Courts have affirmed that WMATA is not a federal agency, but rather an interstate compact that serves as "an 'instrumentality and agency of each of the signatory parties – the District of Columbia, Maryland, and Virginia.' Hence it is not subject to [§ 551(1)]." *Seal & Co. v. WMATA*, 768 F.Supp. 1150, 1154 (E.D.Va. 1991) (quoting *WMATA v. One Parcel of Land*, 706 F.2d 1312, 1314 (4th Cir. 1983)). Accordingly, FOIA does not apply.

As noted above, however, public records are obtainable from WMATA under the governing compact and WMATA regulations through the PARP process.  Defendant notified Plaintiff that PARP would govern his information request in its August 25, 2015, letter, and Plaintiff responded by submitting a notarized copy of his request within the allotted time.  Given Plaintiff's *pro se* status, his claim will be construed as alleging violations of PARP.

Jurisdiction in this court is valid under PARP § 9.3.2. That section, however, requires that the action be filed within two years of the date of administrative exhaustion. *See also* PARP § 9.2.1 ("A Requester must exhaust the administrative appeals process, before seeking judicial review.").  Exhaustion under PARP requires that a denial of a request for records be appealed.  PARP § 9.2.2.  WMATA's letter to Plaintiff on December 11, 2015, clearly stated that he would have to file a written appeal by January 27, 2016, in order to contest any aspect of its determination.  (ECF No. 6-3).  Plaintiff does not contest the fact that he failed to file such an appeal.[2]

---

[2] Plaintiff argues in his opposition that Defendant failed to reply to his requests within the appropriate time limits.  In the context of FOIA, courts have held that a requester may be "deemed to have exhausted his administrative remedies and may commence litigation immediately if the agency fails to comply with the applicable time limit provisions." *Coleman v. Drug Enforcement Administration*, 714 F.3d. 816, 820 (4th Cir. 2013). Plaintiff did not commence his litigation immediately, however,

Therefore, Defendant's motion to dismiss will be granted for failure to exhaust administrative remedies.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendant Washington Metropolitan Area Transit Authority will be granted.  A separate order will follow.


/s/
DEBORAH K. CHASANOW
United States District Judge

---

and this type of "constructive exhaustion" is only valid "so long as the agency has not cured its violation by responding before the requester files suit." *Id.*  Therefore, even if Defendant violated the PARP timing provisions as Plaintiff indicates, Plaintiff was still required to file an administrative appeal once Defendant sent its responsive letter on October 23, 2015.